UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

J.S.M., by her parent, E.M.;
E.M., individually and on behalf of J.S.M.;

B.M., by his parents, M.C. and L.M.;
M.C. and L.M., individually and on behalf of
B.M.;

C.G., by his parent, L.G.;
L.G., individually and on behalf of C.G.;

P.W., by his parents, T.F. and P.R.W.;
T.F. and P.R.W., individually and on behalf of
P.W.; and

Q.T., by his parents, W.J.T. and W.H.T.;
W.J.T. and W.H.T., individually and on behalf
of Q.T.,

on behalf of themselves and all others similarly
situated,

                Plaintiffs,


        -against-


NEW YORK CITY DEPARTMENT OF
EDUCATION; RICHARD A. CARRANZA, as
Chancellor of the New York City Department of
Education; NEW YORK STATE EDUCATION
DEPARTMENT; and SHANNON TAHOE, as
New York State Interim Commissioner of
Education,

                Defendants.

CIVIL ACTION NO. 20-cv-705



**CLASS ACTION COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF**

## INTRODUCTION

1.     Thousands of New York City children with disabilities who are entitled to receive special education services have been and are being denied the free appropriate public education to which they are entitled under federal and state law.

2.     The Individuals with Disabilities Education Act ("IDEA") provides for "impartial due process" hearings at which parents may challenge the adequacy and appropriateness of the special education services offered to their children.  20 U.S.C. § 1415(f).

3.     This procedure is supposed to be quick: federal and state law mandate that within **75 days** of a hearing request, an impartial hearing officer must be assigned, a hearing held, and a decision issued.  These timelines are an essential part of the IDEA's protections and are meant to ensure that children are not indefinitely stuck in administrative limbo—often without access to the services they need.

4.     Notwithstanding this mandate, in New York City, students and their families face an average case length of **259 days**.[1]

5.     This lawsuit seeks to compel the Defendants, the New York City Department of Education ("NYCDOE") and Chancellor Richard Carranza, and the New York State Education Department ("NYSED") and Interim Commissioner Shannon Tahoe, to meet their legal obligations to provide timely due process hearings and decisions.

6.     When families finally do get hearings, they win the majority of the time.  But in the meantime, children are frequently unable to get the special education programs they require to learn.  Delays in due process adjudications are particularly harmful to children whose families

---

[1] Deusdedi Merced, *Update on the NYC Impartial Hearing System*, at 7 (Jan. 12, 2020), *available at* https://www.regents.nysed.gov/common/regents/files/P-12 - Update on the NYC Impartial Hearing System.pdf ("Update on the NYC Impartial Hearing System") (attached to this Complaint as Exhibit 1).

cannot pay upfront for necessary services while their due process complaints are pending and, therefore, must wait months or even years to receive the educational services they need.

7.    The Defendants have allowed this problem to fester for years and New York City now faces more than ***10,000 open due process claims***, of which nearly 70% are already late.[2] NYCDOE has only 69 part-time hearing officers to handle the caseload.[3]   NYSED itself has described this situation as an "unprecedented crisis" with "thousands of students and families waiting for decisions on their due process complaints" and has acknowledged that the system is "overwhelmed."[4]

8.    Despite knowing about these delays for years, the Defendants have failed to repair NYCDOE's severely broken hearing system. The price for this dysfunctional system has been paid by New York's most vulnerable residents: preschool- and school-age children with disabilities that affect their ability to learn.

---

[2]  *Id.* at 8.

[3]  *Id.* at 8, 12.

[4]  Memorandum from Kimberly Young Wilkins, Deputy Comm'r P-12 Instructional Support, NYSED, to P-12 Education Committee, N.Y. St. Board of Regents, at 1, 5 (Jan. 7, 2020), *available at* https://www.regents.nysed.gov/common/regents/files/120p12d3.pdf ("Wilkins Memorandum") (attached to this Complaint as Exhibit 2).

9.     An external review of the impartial due process system commissioned by NYSED described the looming catastrophe:

> This review identified substantial deficiencies in the policies, procedures and practices specific to special education impartial hearings in New York City, including the high rate of extensions granted, the considerable number of recusals, the inadequate payment structure for [impartial hearing officers], and the insufficient number of hearing rooms available to accommodate the day-to-day hearing schedule. Each presents a threat to due process. Collectively, however, they render an already fragile hearing system vulnerable to imminent failure and, ultimately, collapse. That it has not yet collapsed is remarkable given the staggering numbers of due process complaints filed in New York City.[5]

10.     Plaintiffs bring this action to seek redress for themselves and other similarly injured students and their families pursuant to the IDEA, 20 U.S.C. § 1400 *et seq.*, and New York State Education Law, along with their implementing regulations, as well as the Rehabilitation Act and the Americans with Disabilities Act.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.  Plaintiffs' claims for relief under federal law arise under 20 U.S.C. § 1415(i) and also under 42 U.S.C. § 1983, as Defendants have acted under color of state law.  Plaintiffs also bring claims under Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504"), and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 *et seq*. ("ADA").  Accordingly, the jurisdiction of this Court also is invoked pursuant to 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4).  Declaratory and injunctive relief is available under 28 U.S.C. §§ 2201 and 2202.

12.     Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b) because Defendants NYCDOE and NYSED operate in that judicial district, Plaintiffs J.S.M.,

---

[5]  Deusdedi Merced, External Review of the New York City Impartial Hearing Office, Special Educ. Solutions, LLC, at 22 (Feb. 22, 2019) ("External Review") (attached to this Complaint at Exhibit 2, Attachment D).

C.G. and P.W. reside there, and a substantial part of the events giving rise to Plaintiffs' claims occurred and continue to occur there.

**PARTIES**

13.    Initials are used throughout this Complaint to preserve the anonymity of the children and their parents, and the confidentiality of their personal information, in conformity with Rule 5.2(a) of the Federal Rules of Civil Procedure, the privacy provisions of the IDEA, 20 U.S.C. § 1417(c), and of the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g.

14.    Plaintiff J.S.M. is a minor child who is a student with a disability eligible to receive special education services.  Plaintiff E.M. is the parent of J.S.M., and brings this lawsuit on behalf of herself and J.S.M.  The family resides in Queens.  As described in detail below, J.S.M.'s disability substantially impairs a major life activity and J.S.M. has a disability as defined under the ADA and Section 504.

15.    Plaintiff B.M. is a minor child who is a student with a disability eligible to receive special education services.  Plaintiffs M.C. and L.M. are the parents of B.M., and bring this lawsuit on behalf of themselves and B.M.  The family resides in the Bronx.  As described in detail below, B.M.'s disability substantially impairs a major life activity and B.M. has a disability as defined under the ADA and Section 504.

16.    Plaintiff C.G. is a minor child who is a student with a disability eligible to receive special education services.  Plaintiff L.G. is the parent of C.G., and brings this lawsuit on behalf of herself and C.G.  The family resides in Brooklyn.  As described in detail below, C.G.'s disability substantially impairs a major life activity and C.G. has a disability as defined under the ADA and Section 504.

17.    Plaintiff P.W. is a minor child who is a student with a disability eligible to receive special education services.  Plaintiffs T.F. and P.R.W. are the parents of P.W., and bring this

lawsuit on behalf of themselves and P.W.  The family resides in Brooklyn.  As described in detail below, P.W.'s disability substantially impairs a major life activity and P.W. has a disability as defined under the ADA and Section 504.

18.      Plaintiff Q.T. is a minor child who is a student with a disability eligible to receive special education services. Plaintiffs W.J.T. and W.H.T are the parents of Q.T., and bring this lawsuit on behalf of themselves and Q.T.  The family resides in Manhattan.  As described in detail below, Q.T.'s disability substantially impairs a major life activity and Q.T. has a disability as defined under the ADA and Section 504.

19.      Defendant NYCDOE is the local educational agency legally constituted with administrative control over public schools in New York City, including ensuring compliance with the IDEA.  34 C.F.R. § 303.23; N.Y. Educ. Law § 4402(1)(a).  Upon information and belief, NYCDOE receives federal and state funds to assist in educating students with disabilities.

20.      Defendant NYSED is the state educational agency responsible for ensuring IDEA compliance by New York State public schools, including the NYCDOE.  20 U.S.C. § 1412(a)(11). NYSED receives federal and state funds to assist in educating students with disabilities.

21.      Defendant Richard Carranza is the Chancellor of NYCDOE, and as such is entrusted with certain duties, including oversight of NYCDOE's provision of education and services to students with disabilities.  *See* N.Y. Educ. Law § 2590-h.  Chancellor Carranza and NYCDOE are collectively referred to as the "City Defendants."

22.      Defendant Shannon Tahoe is the New York State Interim Commissioner of Education, and as such is responsible for enforcing all laws relating to the educational system of New York State, executing all State educational policies, and has general supervisory authority over all schools subject to the New York State Education Law, including NYCDOE.  N.Y. Educ.

Law § 305(1)–(2).  Commissioner Tahoe and NYSED are collectively referred to as the "State Defendants."

## STATUTORY AND REGULATORY FRAMEWORK

**Impartial Due Process for Students with Disabilities Under the IDEA and N.Y. Law**

23.    The IDEA provides for federal funds to assist states in educating students with disabilities.  20 U.S.C. § 1412.

24.    As a condition of this funding, recipient states must provide every eligible child with a "free appropriate public education," also known as a "FAPE."  20 U.S.C. § 1412(a)(1).

25.    Under the IDEA, "local educational agencies" are responsible for developing an individualized education program ("IEP") for each eligible child.  20 U.S.C. § 1414.  The IEP is a document that describes the program of special education and related services a student must receive in order to make progress in light of that child's unique circumstances and is the vehicle for ensuring that the child receives a free appropriate public education.  20 U.S.C. §§ 1401(9)(D), (14), 1414(d).

26.    Local educational agencies must ensure that students with disabilities receive the educational supports and services mandated by their IEPs.  20 U.S.C. §§ 1412(a)(1)(A), 1414(d)(2).

27.    The IDEA requires each State to have a "state educational agency" that is "primarily responsible" for ensuring that IDEA requirements are met throughout the State, including that all local educational agencies in the State comply with the IDEA.  20 U.S.C. § 1401(32); *see* 20 U.S.C. § 1412(a)(11).

28.    Parents and legal guardians have the right to challenge any aspect of their child's IEP or allege a deprivation of a free appropriate public education by filing a "due process" complaint.  20 U.S.C. § 1415(b)(6)–(7); 34 C.F.R. § 300.507(a)(2).

29.     Parents may allege, for instance, that the local educational agency failed to adequately evaluate their child's special education needs as required by law, that their child's IEP does not provide the child necessary therapies or services or an appropriate educational placement, or that the child is not receiving the services mandated by an IEP.

30.     Parents may also seek "compensatory education," that is, prospective educational services to alleviate educational deficits caused by past deprivation of a free appropriate public education.  *See* 67B Am. Jur. 2d Schools § 430 (2019); *Somoza* v. *New York City Dep't of Educ.*, 538 F.3d 106, 109 n.2 (2d Cir. 2008).

31.     To adjudicate parents' challenges to their children's IEPs or other alleged deprivations of a free appropriate public education, parents are entitled to a "due process" hearing before an impartial hearing officer, also known as an "IHO."  *See generally* 20 U.S.C. § 1415; N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 8 § 200.5 (2019).

32.     New York State has a two-tier administrative system for adjudicating IDEA violations.  *See* N.Y. Educ. Law § 4404.

33.     Impartial hearing officers hear cases at the local level and issue decisions.  Either party may appeal those decisions to a state review officer, who issues final decisions.  N.Y. Educ. Law § 4404(1)–(3).  A state review officer's decision may be appealed in state or federal court.  *Id*. § 4404(3); 20 U.S.C. § 1415(i)(2)(A).

34.     Impartial hearing officers must be certified by the commissioner of NYSED, who also sets their maximum compensation.  N.Y. Educ. Law § 4404(1)(c); 8 NYCRR § 200.21(a).  Hearing officers are independent contractors who act as hearing officers part-time.

35.     In New York City, due process hearings are administered by the New York City Impartial Hearing Office.

36.     That office processes requests for due process hearings, appoints impartial hearing officers, calendars hearing dates, communicates with parties, maintains physical hearing facilities, and provides hearing-related services such as transcription, translation, and evidence processing.

37.     The office maintains an alphabetical list of impartial hearing officers, from which individual impartial hearing officers are appointed to cases on a rotating basis.   8 NYCRR § 200.2(e)(1)(ii).

38.     The office is responsible for appointing an impartial hearing officer to adjudicate each due process complaint.

39.     Once assigned, the impartial hearing officer conducts pre-hearing activities, including holding conferences and issuing "interim" orders for relief pending resolution of the due process complaint. Interim orders include, for example, orders maintaining a student's current placement (called "pendency"), orders granting compensatory education, and orders for educational evaluations.

40.     The hearing officer is charged with holding a hearing and issuing a written decision within the deadlines mandated by law.

**Timelines for Due Process Hearings**

41.     Fundamental to the IDEA's due process structure are strict timelines for holding impartial hearings and issuing decisions.

42.     Filing a due process complaint triggers a 30-day "resolution period," during which the local educational agency must have a settlement meeting with the parent within 15 days of receiving a complaint.  34 C.F.R. § 300.510(a); *see also* 20 U.S.C. § 1415(f)(1)(B).

43.     If the local educational agency does not resolve the due process complaint to the parent's satisfaction by the close of the 30-day resolution period, the matter goes to an impartial

hearing.  20 U.S.C. § 1415(f)(1)(B)(ii); 34 C.F.R. § 300.510(b)(1).  "[A]ll applicable timelines" for such a hearing commence at the end of the resolution period.  20 U.S.C. § 1415(f)(1)(B)(ii).

44.     Federal regulation requires that "[a] final decision is reached in the hearing" and the decision is provided to the parties "not later than 45 days after the expiration of the" resolution period.  34 C.F.R. § 300.515(a).

45.     In other words, in the ordinary course, the due process complaint must be fully heard and resolved at the hearing officer level within a maximum of 75 days.

46.     New York State law also imposes time constraints on holding hearings for and deciding due process complaints and prohibits appointment of impartial hearing officers unable to meet the statutory deadlines.  8 NYCRR § 200.5(j)(3)(i)(b).

47.     Under State regulations, absent exceptional circumstances, the hearing decision "is due not later than 45 days" after the end of the resolution period.  *Id.* § 200.5(j)(5); *see also id.* §§ 200.5(j)(2)(v)(b), 200.5(j)(3)(iii)(b).

48.     State law further protects parents' right to timely due process determinations by, for example, requiring that a hearing or pre-hearing conference be scheduled within the first fourteen days after the federally-mandated resolution period ends.  *Id.* § 200.5(j)(3)(iii)(b).

| How The Impartial Hearing Process Is Supposed To Work | | | | |
|---|---|---|---|---|
| Step 1 | Parent Files Complaint and Resolution Period Begins | | 30 Days | 75 Days |
| Step 2 | Hearing Officer Assigned | within 2 business days of complaint | | |
| Step 3 | Resolution Meeting with Parent and School Officials | within 15 days of complaint | | |
| Step 4 | Resolution Period Ends | | | |
| Step 5 | Scheduling of Hearing or Pre-Hearing Conference | within 14 days of end of resolution period | 45 Days | |
| Step 6 | Hearing | as agreed by parties and hearing officer | | |
| Step 7 | Final Decision Issued | within 45 days of end of resolution period | | |

Sources: 20 U.S.C. § 1415(f)(1)(A), § 1415(f)(1)(B)(i), § 1415(f)(1)(B)(ii); 34 C.F.R. § 300.515(a); 8 N.Y.C.R.R. § 200.5(j)(2)(i), § 200.5(j)(2)(v), § 200.5(j)(3)(i)(a), § 200.5(j)(3)(iii)(b), § 200.5(j)(5).

49.     Impartial hearing officers may consider extending the deadlines, but only at the request of one or both parties.  34 C.F.R. § 300.515(c); 8 NYCRR § 200.5(j)(5)(i)–(iv).

50.     A hearing officer may not "solicit extension requests or grant extensions on his or her own behalf or unilaterally issue extensions for any reason."  8 NYCRR  § 200.5(j)(5)(i).

51.     When granting an extension, the hearing officer must "fully" consider the delay's impact on the child's educational interests, fairness to the parties, any adverse financial consequences to the parties as a result of the delay, and whether there has already been a delay in the proceeding caused by one of the parties.  *Id.* § 200.5(j)(5)(ii).

52.     The hearing officer must document the reason for granting any extension in the hearing record. *Id.* § 200.5(j)(5)(i). Each extension cannot exceed 30 days. *Id.*

53.     Agreement of the parties is not a sufficient basis for granting an extension, and a hearing officer may not grant extensions because of vacations, scheduling conflicts or other similar reasons, unless there is a compelling reason or specific showing of substantial hardship. *Id.* § 200.5(j)(5)(iii).

54.     The responsibility for ensuring compliance with these deadlines rests with the City Defendants and, ultimately, with the State Defendants. 20 U.S.C. § 1412(a)(11)(A); 34 C.F.R. §§ 300.149(a), 300.515(a)–(b); 8 NYCRR § 200.5(j)(3).

**Protections for Students with Disabilities Under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act**

55.     Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act protect individuals with disabilities from discrimination in receiving public primary and secondary education.

56.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

57.     Title II defines disability as a "physical or mental impairment that substantially limits" a "major life activity" of an individual, such as learning. *Id*. § 12102.

58.     As described in detail below, Plaintiffs J.S.M., B.M., C.G., P.W. and Q.T. (the "Minor Plaintiffs") are individuals with disabilities under the ADA because each has a disability that substantially limits a major life activity.

59.     Defendants NYSED and NYCDOE are public entities that provide services for which the Minor Plaintiffs are qualified.  Title II therefore protects the Minor Plaintiffs from discrimination in the provision of these services on the basis of the Minor Plaintiffs' disabilities.

60.     Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

61.     The Rehabilitation Act defines disability as "a physical or mental impairment" which "results in a substantial impediment" of a major life activity.  *Id*. § 705.

62.     As described in detail below, the Minor Plaintiffs are individuals with disabilities under Section 504 because each has a disability that results in a substantial impediment of a major life activity.

63.     Under the implementing regulations of Section 504, a recipient of federal funds that operates a public elementary or secondary education program shall provide a free appropriate public education to each qualified individual with a disability in the recipient's jurisdiction.  34 C.F.R. § 104.33(a).  The provision of a free appropriate public education means the provision of regular or special education and related aids and services designed to meet the individual educational needs of students with disabilities as adequately as the needs of students without disabilities.  *Id.* § 104.33(b).

64.     NYSED and NYCDOE are entities receiving federal funds that provide services for which the Minor Plaintiffs are qualified.  Section 504 therefore protects the Minor Plaintiffs from discrimination in the provision of these public services on the basis of the Minor Plaintiffs' disabilities.

## FACTUAL ALLEGATIONS CONCERNING THE DEFENDANTS

**Defendants' Unlawful and Systemic Hearing Delays**

65.     For years, the Defendants have failed to meet their obligations under federal and state law to timely provide due process hearings and decisions.

66.     In January 2018, NYSED commissioned an independent review (the "External Review") of NYCDOE's policies, procedures and practices relating to special education impartial hearings.  The results of the review, issued in a February 22, 2019 report, are staggering.  The report concluded:

> [T]he process failures confirmed in this report are long-standing and allowed to fester with impunity.  Notwithstanding [NY]SED's efforts to 'right the ship,' New York City's hearing system is in rapid, continuing decline.[6]

67.     The report also observed that the "systemic deficiencies" in the impartial hearing process in New York City "are symptomatic of an unhealthy hearing system that requires immediate intervention."[7]

68.     The External Review found that for the 2018–2019 school year, the average impartial due process case length was 225 days.[8]  Although the Defendants have had almost a year since the report to address this issue, a January 2020 report to the New York State Board of Regents stated that the average case length has ***increased*** to ***259 days***—over three times the mandated duration.[9]

---

[6]  External Review (Ex. 2, Attach. D), at 44.

[7]  *Id.* at 20.

[8]  *Id.* at 19.

[9]  Update on the NYC Impartial Hearing System (Ex. 1), at 7.

69.     The crisis is acute: right now, there are more than 10,000 due process claims pending in New York City (compared with 211 in the rest of the state).  Of those, nearly 70% are already late:

| Figure 6<br>Open/Late Cases | NYC | ROS |
| --- | --- | --- |
| **OPEN CASES** | 10181 | 211 |
| **LATE CASES** | 6803 | 25 |

Source:  New York State Education Department (as of 01/10/20)

*"[T]he brevity of the 45-day requirement indicates Congress's intent that children not be left indefinitely in an administrative limbo while adults maneuver over the aspect of their lives that would, in large measure, dictate their ability to function in a complex world."*

Engwiller v. Pine Plains Cent. Sch. Dist. (S.D.N.Y.)



Source: Update on the NYC Impartial Hearing System, at 8 (Exhibit 1).  ("ROS" means rest of state.)

70.     NYCDOE has only 69 impartial hearing officers available to manage this caseload. According to the report to the Board of Regents, "in the past year, only a few (and often none) are available to accept cases on a per day basis."[10]

71.     As of early January 2020, over 1,300 complaints were awaiting an appointment of an impartial hearing officer[11]—notwithstanding that New York State regulations require the appointment of a hearing officer within two business days of a complaint's filing.  8 NYCRR § 200.5(j)(3)(i)(a).

72.     This problem has only grown over time, as reflected in the recent report to the Board of Regents, which shows the average case length steadily increasing over the last six school years:

---

[10]  *Id.* at 12.

[11]  *Id.*

**Figure 5**
**Average Case Length**

| | SY 2014-15 | SY 2015-16 | SY 2016-17 | SY 2017-18 | SY 2018-19 | SY 2019-20 |
|---|---|---|---|---|---|---|
| **STATEWIDE** | 146 | 155 | 175 | 196 | 220 | 251 (as of 01/10/20) |
| **NYC** | 149 | 159 | 181 | 202 | 225 | 259 |
| **ROS** | 115 | 114 | 114 | 120 | 139 | 135 |

Source: New York State Education Department

Source: Update on the NYC Impartial Hearing System, at 7 (Exhibit 1).

73.    Indeed, during the 2016–2017 school year, the most recent year for which published data is available, only 14% of due process complaints that resulted in written decisions were decided within the 45-day deadline.[12]

74.    The Defendants have long been on notice of the extensive and egregious delays in New York City due process hearings.

75.    In May 2019, NYSED stated that "NYCDOE has multiple outstanding findings of noncompliance involving the requirements to ensure proper procedural safeguards to students and parents" and has not met the requirements of the IDEA "for *13 consecutive years* due to performance and/or compliance outcomes for the subgroup of students with disabilities."[13]  As NYSED put it, NYCDOE is "a district that needs intervention in implementing these requirements."[14]

---

[12] External Review (Ex. 2, Attach. D), at 15.

[13] New York State Education Department, Office of Special Education, *New York City Department of Education Compliance Assurance Plan*, at 2 (May 2019) (emphasis added) ("Compliance Assurance Plan") (attached to this Complaint as Exhibit 2, Attachment E).

[14] *Id.*

76.     In addition, in September 2016, the United States Department of Education's Office of Special Education Programs conducted its own review of NYCDOE's impartial hearing system.

77.     That review found that New York State "does not have procedures in place to ensure that independent hearing officers at the first tier are issuing due process hearing decisions within the 45-day timeline required by 34 C.F.R. § 300.515(a)."[15]

**Causes of Delays**

78.     The egregious and systemic delays in holding and deciding administrative hearings stem from a number of related factors.

### *(1) High Volume of Complaints and Unlawful Use of "Pendency Orders"*

79.     New York City faces an exceptionally high number of due process complaints. During the 2017–2018 school year, 7,144 due process complaints were filed in New York City.[16]

80.     In that school year, NYCDOE alone received *more* complaints than all of California, Florida, Illinois, Pennsylvania and Texas *combined*.[17]

81.     NYCDOE makes the burden on the hearing system from this number of complaints far worse through an unlawful and detrimental policy of requiring hearing officers to issue "pendency, or stay put, order[s]."[18]

82.     The IDEA's "stay-put" provision entitles a child to remain in the "then-current educational placement" while a due process complaint seeking to maintain that placement is pending.  20 U.S.C. § 1415(j); 34 C.F.R. § 300.518.  During that period, a child is entitled to the

---

[15] U.S. Department of Education, Office of Special Education Programs, *New York Monitoring and Support Visit Summary and Next Steps*, at 5 (Sept. 28–30, 2016), *available at* https://www2.ed.gov/fund/data/report/idea/partbdmsrpts/dms-ny-b-2016-dispute-resolution.pdf ("OSEP Review").

[16] External Review (Ex. 2, Attach. D), at 13.

[17] *See* Update on the NYC Impartial Hearing System (Ex. 1), at 3.  School year 2017–2018 is the most recent period for which nationwide data is available.

[18] Wilkins Memorandum (Ex. 2), at 2.

status quo: continuing the same services and placement in place at the time the due process complaint was filed.

83.     Under the IDEA, pendency is automatic.   Nonetheless, NYCDOE maintains a policy and practice of requiring a written pendency order from an impartial hearing officer in order to maintain a student's then-current placement.[19]  This policy and practice is applied even to cases where NYCDOE does not dispute a student's then-current placement.[20]

84.     NYCDOE's pendency policy and practice is not required by any applicable law or regulation.  In fact, a January 2020 New York State Board of Regents memorandum described the use of pendency orders in uncontested cases as "inconsistent with the Individuals with Disabilities Education Act."[21]  The External Review of NYCDOE's practices commissioned by NYSED went further, stating "[s]uch practice violates IDEA, delays continued services to students, and increases litigation costs to parents unnecessarily."[22]

85.     Many hearing officers will not issue a written pendency order without holding a hearing.  NYCDOE's practice of requiring written pendency orders thus results in hundreds of unnecessary hearings that clog NYCDOE's docket and requires hours of work on the part of parties and hearing officers.  NYSED itself has acknowledged the problem:

> NYSED has documented that NYCDOE requires a hearing or IHO determination for pendency, even when a student's pendency is not in dispute, unnecessarily adding to the number of due process complaints filed.[23]

---

[19] *See* External Review (Ex. 2, Attach. D), at 16 n.43.

[20] *See id.* at 16.

[21] Wilkins Memorandum (Ex. 2), at 2.

[22] External Review, at 48.

[23] Compliance Assurance Plan (Ex. 2, Attach. E), at 19.

86.     For instance, in New York City, there were 1,425 pendency hearings in the 2017–2018 school year and 1,482 in the 2018–2019 school year (as of mid-January 2019). By comparison, the rest of New York State had a total of eight pendency hearings for that same period.[24]

### (2) Too Few Impartial Hearing Officers and Too Many Recusals

87.     There are far too few impartial hearing officers available to hear the voluminous caseload.

88.     As of mid-January 2020, there were only 69 hearing officers certified by NYSED to adjudicate due process complaints in New York City.[25]

89.     In practice, only a handful of these hearing officers are active and available for assignment at any time. Even those officers frequently recuse themselves after assignment due to their overwhelming caseloads.

90.     NYCDOE has experienced a "startling" number of recusals.[26]

91.     During the 2018–2019 school year, there were over **12,000** recusals for approximately 4,200 cases. Over 1,600 cases experienced three or more hearing officer recusals.[27]

92.     Until recently, such "recusals" were not limited to circumstances in which a hearing officer was disqualified because of self-interest, bias, or prejudice. Rather, a hearing officer who was simply unavailable, or was available but chose not to accept the appointment for any reason

---

[24] External Review (Ex. 2, Attach. D), at 16.

[25] Update on the NYC Impartial Hearing System (Ex. 1), at 12.

[26] *Id.* at 16–17.

[27] Memorandum from Christopher Suriano, Assistant Comm'r, Off. of Special Educ., NYSED, to Impartial Hearing Officers Who Conduct Impartial Hearings for New York City, Nov. 19, 2019, *available at* http://p1232.nysed.gov/specialed/publications/documents/recusal-memo-to-nyc-impartial-hearing-officers.pdf ("Suriano Memorandum").

or no reason, was deemed to have "recused" him or herself. Such recusals often occurred immediately upon a hearing officer's assignment, requiring a case to be reassigned.[28]

93.     Hearing officers frequently recused themselves as a way to manage their caseloads. The primary reason for recusals in New York City has been the "unavailability" of the hearing officer.[29]

94.     The External Review found that the "disproportionate number of recusals are an impediment to the timely completion of due process hearings."[30]

95.     On November 18, 2019, NYSED issued a directive relating to NYCDOE's recusal policy.[31]

96.     NYSED found that "[e]ach instance of recusal created delays in the hearing timelines, and there have been numerous instances when this practice has resulted in several months of delay before an appointed IHO retained the case."[32]  This process of recusals "has resulted in significant delays in the appointment of an IHO who retains and administers the case until its conclusion and is undermining [NYSED's and NYCDOE's] shared goal of providing timely and meaningful due process for parties."[33]

97.     The November 2019 directive instructed NYCDOE to limit recusals to instances of personal or professional conflicts or unexpected unavailability.[34]

---

[28] *Id.* at 17 n.48 (explaining that the term "recusal" is a "misnomer" in this context, because hearing officers are assigned "on an automatic rotational appointment basis" and "[a]n IHO who is appointed but simply unavailable, or . . . chooses not to accept the appointment, is deemed to have recused him/herself").

[29] Compliance Assurance Plan (Ex. 2, Attach. E), at 20; External Review (Ex. 2, Attach. D), at 35, 43.

[30] External Review, at 17.

[31] Suriano Memorandum.

[32] *Id.* at 1.

[33] *Id.*

[34] *Id.*

98.     Upon information and belief, as a result of the implementation of this new recusal policy, many hearing officers notified the New York City Impartial Hearing Office that they were unavailable to accept new cases because they knew they would no longer be permitted to recuse themselves following assignment.

99.     As a result, the number of available impartial hearing officers has dropped substantially.  A media outlet reported in December 2019 that NYCDOE stated that "there are only five hearing officers currently available to take on additional cases."[35]

100.     As of December 18, 2019, no hearing officers had been assigned to *any* of the due process complaints filed after the new recusal policy was implemented on November 18, 2019. Furthermore, upon information and belief, to date, no hearing officers have been assigned to *any* of the due process complaints filed after the new recusal policy was implemented.

101.     The Impartial Hearing Office has been sending the following form email to parents who file due process claims to inform them of the unavailability of hearing officers and that they will be placed on a waitlist for a hearing officer assignment:

> Due to the extremely low number of hearing officers in rotation, we are unable to appoint a hearing officer at this time.  On November 18, 2019, the New York State Education Department (NYSED) directed the New York City Department of Education's (DOE) Impartial Hearing Office (IHO), to begin assigning cases in the order of the complaint filing date, with the oldest filing dates being assigned first. A hearing officer will be appointed to your case in accordance with this new policy. Once a hearing officer appointment can be made for your case, you will receive a notice via email/mail.

102.     Additionally, upon information and belief, the Impartial Hearing Office has recently been sending a docketing notice indicating that no hearing officer was assigned

---

[35] Yoav Gonen, *NYC Special Education Cases Face 'Alarming' Delays as Children Wait for Help*, Chalkbeat (Dec. 2, 2019), *available at* https://chalkbeat.org/posts/ny/2019/12/02/nyc-special-education-cases-face-alarming-delays-as-children-wait-for-help.

("Impartial Hearing Officer Appointed: NO APPOINTMENT") with no further follow-up indicating how cases are being assigned.

103.    As a result, as of early January 2020, **_more than 1,300 complaints_** were awaiting initial appointment of a hearing officer.[36]

104.    Parents whose complaints have not been assigned to a hearing officer are unable to seek hearing officer intervention to, among other relief, issue a pendency order, direct interim relief, or initiate a hearing in the event NYCDOE fails to hold a resolution session.

105.    Upon information and belief, the Defendants have not taken adequate steps to address the acute crisis prompted by the November 2019 change in recusal policy.

106.    The U.S. Department of Education's review also noted NYSED's failure to address noncompliance with the 45-day timeline caused by recusals, including recusals after that period had already expired.[37]

### (3) Unlawful Use of Extended Timelines

107.    Another cause of the delays in providing timely hearings and decisions is the unlawful use of extensions of the timelines mandated by the IDEA and New York State regulations.

108.    Extensions are allowed, but only at the request of the parties (*e.g.*, hearing officers may not solicit extensions), only under certain circumstances, and only if they are adequately documented in the hearing record.  34 C.F.R. § 300.515(c); 8 NYCRR § 200.5(j)(5)(i)–(ii).  A hearing officer may not "grant extensions on his or her own behalf or unilaterally issue extensions for any reason."  8 NYCRR § 200.5(j)(5)(i).

---

[36] Wilkins Memorandum (Ex. 2), at 2.

[37] OSEP Review, at 3.

109.    In practice, improper extensions are widespread.  The External Review concluded that "the validity of reported timeliness in New York City cannot be assumed."[38]

110.    The External Review observed that the proportion of cases purportedly decided within "extended timelines" is "exceptionally high."[39]  During the 2017–2018 school year, for example, hearing officers in New York City issued 35,157 extensions, which represents 97% of all extensions granted in New York State during that period.[40]  Since the 2014–2015 school year, New York City has accounted for 94% to 97% of extensions granted in the State, whereas the other 732 school districts in the State accounted for 3% to 6% of extensions.[41]

111.    Upon information and belief, the vast majority of proceedings purportedly decided within "extended timelines" are in fact out of compliance with statutory timelines.

112.    Hearing officers often extend the 45-day deadline unilaterally, without notifying either party, and fail to document these extensions in the record in violation of state regulations.[42]  Indeed, the External Review observed that the "[p]revalent practice in New York City is to extend the timeline without a written order meeting the requirements of 8 NYCRR § 200.5(j)(5)."[43]

113.    In other instances, hearing officers solicit extensions from the parties, in violation of state regulations.  In yet other instances, upon information and belief, parties know that if they do not request extensions of the timelines to accommodate a hearing officer's caseload or availability, the hearing officer may recuse, leading to further delays.  These practices have the effect of coercing parties into acquiescing to extensions of the 45-day timeline.

---

[38] External Review (Ex. 2, Attach. D), at 35.

[39] *Id.* at 16.

[40] *Id*. at 17.

[41] *Id.* at 16–17.

[42] *See id.* at 35–36.

[43] *Id.* at 35.

### *(4) Insufficient Compensation and Space for Hearing Officers*

114.   NYCDOE undercompensates hearing officers and its payment structure disincentivizes timely and appropriate resolution of hearings.[44]

115.   The External Review found that NYCDOE compensates hearing officers by task, rather than on an hourly basis and that rates have remained unchanged for more than two decades.[45]

116.   The External Review observed that hearing officer pay rates "are not commensurate with the awesome responsibilities that they have undertaken."[46]  For instance, for conducting a day of hearings, hearing officers are effectively compensated at $40 per hour, which "is not an appropriate compensation rate for individuals required to be licensed attorneys and highly trained," especially given a trend in recent years toward the increasing legal complexity of due process hearings.[47]

117.   Further, there is no compensation available for certain tasks that are "essential to the efficient and timely administration of due process complaints."[48]  For instance, hearing officers are not compensated for time spent conducting status conferences, reviewing transcripts and legal memoranda submitted by the parties, or drafting certain necessary interim orders.[49]

118.   Additionally, hearing officers are only paid a one-time fee per case for prehearing conferences and are not compensated at all for writing the follow-up summary and order. These

---

[44] *Id.* at 29–32.

[45] *Id.* at 29.

[46] *Id.* at 40.

[47] *Id.*

[48] *Id.* at 30.

[49] *Id.* at 30–31.

policies discourage such hearings and orders, which provide an important opportunity for "simplifying or clarifying the issues" for hearing and ensuring timely decisions.[50]

119.    A further cause of delays is that the Impartial Hearing Office maintains vastly insufficient physical space, which leads to over-calendaring and further delays.[51]

120.    Importantly, there are not enough hearing rooms.[52] And recent renovations to the hearing offices in 2019 did not include an increase in the number of hearing rooms.

### *(5) Obstacles to Timely Settlements*

121.    The City Defendants' staffing and other practices pose obstacles to timely settlement, even where NYCDOE does not intend to defend the due process complaint.[53]

122.    On occasion, either through the resolution session, at a hearing, or otherwise, NYCDOE and the parent agree to a settlement in principle of the parent's claims.

123.    However, NYCDOE representatives at resolution sessions and impartial hearings do not have authority to settle most parents' claims if such settlements would entail the expenditure of funds by NYCDOE.[54]

124.    Instead, a separate office of NYCDOE is responsible for investigating and approving settlement offers.  Upon information and belief, this office does not contain adequate staff to address the volume of complaints that are appropriate for settlement.

---

[50] *Id.* at 41; 8 NYCRR § 200.5(j)(3)(xi).

[51] External Review (Ex. 2, Attach. D), at 24–27, 32–33, 37–39.

[52] *Id.* at 35.

[53] Wilkins Memorandum (Ex. 2), at 2, 6.

[54] Letter from Karin Goldmark, Deputy Chancellor of Sch. Planning & Dev., NYCDOE, to Christopher Suriano, Assistant Comm'r, Special Educ., NYSED, June 17, 2019 , *available at* https://drive.google.com/file/d/19-TW3ub-Pah4Wfz48b04M9nymq4HEc35 ("June 17 Goldmark Letter").  Upon information and belief, NYCDOE's responses to NYSED were obtained by a reporter and posted online.  *See* Alex Zimmerman, *NYC Vows to Address Special Education Failures Detailed in State Review. But Will Their Reforms Go Far Enough?*, Chalkbeat (Jul. 9, 2019), *available at* https://chalkbeat.org/posts/ny/2019/07/09/nyc-vows-to-address-special-education-failures-detailed-in-state-review-but-will-their-reforms-go-far-enough.

125.    In some cases, parties wait for over a year to obtain a fully approved and executed settlement.

126.    During the lengthy process of negotiation and approval, a case on track for settlement remains on a hearing officer's docket, reducing the hearing officer's availability and hindering her ability to take on additional cases.

**Defendants' Response to Delays Has Been Profoundly Inadequate**

127.    In May 2019, NYSED placed NYCDOE under a written "Compliance Assurance Plan," in an attempt to bring NYCDOE into compliance with the IDEA.

128.    NYSED ordered NYCDOE to provide "a corrective action plan to correct its failure to provide students with disabilities and their parents all the rights and procedural safeguards required by federal and State law and regulations" by June 17, 2019.[55]

129.    In June 2019, NYCDOE submitted written responses to NYSED.[56]

130.    In its responses, NYCDOE acknowledged that parents "are experiencing major delays due to a shortage in NYSED-certified hearing officers available to hear cases and other issues."[57]  NYCDOE stated there were only nine hearing officers available to hear over 9,000 due process claims filed for the 2018–2019 school year.[58]

131.    NYCDOE stated that the primary responsibility for hearing delays lies with NYSED, because NYSED has failed to hire and train adequate numbers of hearing officers.[59]

---

[55] Compliance Assurance Plan (Ex. 2, Attach. E), at 22.

[56] NYCDOE Response to NYSED, *Section III Affording Students with Disabilities and Their Parents All the Rights and Procedural Safeguards Required by Federal and State Law and Regulations*, June 3, 2019, *available at* https://drive.google.com/file/d/1fZfQw7N1RnI_A9KduylAVxwkIE31U0UF ("June 3 NYCDOE Response").

[57] June 17 Goldmark Letter, at 1.

[58] *Id.*

[59] *Id*.

132.    NYCDOE's responses included few commitments other than investments in mediation and largely cosmetic improvements to physical space at the Impartial Hearing Office.

133.    NYCDOE refused to address delays in approving monetary settlements in uncontested cases, claiming that these delays were attributable to the monetary settlement review process at the New York City Comptroller's office.[60]

134.    NYCDOE's responses also stated that it will "[e]nsure uncontested pendency matters are not brought before" hearing officers by July 2020, but only "pending resource availability in the DOE."[61]

135.    While NYCDOE's responses described improvements in the promptness of hearing officer compensation,[62] the responses did not otherwise describe reforms to aspects of the hearing officer compensation policy that disincentivize efficiency.

136.    With respect to improvements at the Impartial Hearing Office, NYCDOE stated that it had (1) added three additional staff members to the office; (2) made "structural improvements" to the rooms used for hearings (*e.g.*, addressed temperature regulation issues, improved sound proofing, put student artwork on the walls, renovated spaces for confidential conversations); and (3) renovated three spaces for confidential conversations between counsel and parents.[63]

---

[60] *Id.* at 2.

[61] NYCDOE Response to NYSED, *Section III Affording Students with Disabilities and Their Parents All the Rights and Procedural Safeguards Required by Federal and State Law and Regulations*, June 17, 2019, at 2 *available at* https://drive.google.com/file/d/1VJvI7z6_NxwKQQZR1KZ14Kss9py1dgKw.

[62] *Id.*

[63] *Id.* at 1–3.

137.    These changes do not address hearing delays.  Importantly, NYCDOE's responses to the Compliance Assurance Plan do not note an increase in the number of hearing rooms or promise such an increase.[64]

138.    The State Defendants are aware that the City Defendants' actions to date are not sufficient to address the egregious hearing delays.  As of November 2019, upon information and belief, NYSED remained concerned that NYCDOE's due process system was failing parents seeking timely determinations of complaints regarding special education services.  And as of January 2020, those concerns had still not yet been resolved.[65]

139.    That the Defendants' attempts to remedy hearing delays have fallen woefully short is evidenced by the increasing number of open cases and cases without a hearing officer assigned.

**Harm to New York City Children**

140.    The egregious and systemic delays in NYCDOE's due process hearing system persist.  The Defendants have failed, and are failing, to comply with statutory and regulatory deadlines for holding hearings and issuing decisions on due process complaints.

141.    As a result, New York City children whose families file due process complaints to seek adequate special education services are being systemically denied the protections guaranteed them by federal and state law.

142.    Defendants' noncompliance with statutory and regulatory deadlines for due process hearings has harmed thousands of New York City children with disabilities, and continues to harm them on an ongoing basis.

---

[64] *Id.* at 1–4.

[65] *See* Wilkins Memorandum (Ex. 2).

143.    The right to a timely hearing is a "fundamental component" of the due process protections provided by the IDEA. *Blackman* v. *District of Columbia*, 277 F. Supp. 2d 71, 78 (D.D.C. 2003).

144.    The extensive delays experienced by families who file due process complaints in New York City leave children in "indefinite[] . . . administrative limbo" that has the effect of denying them a free appropriate public education. *Engwiller* v. *Pine Plains Cent. Sch. Dist.*, 110 F. Supp. 2d 236, 240 (S.D.N.Y. 2000).

145.    Many children are severely and irreparably harmed by the delays.

146.    Defendants' failure to ensure the timely determination of due process complaints is especially harmful to low-income students with disabilities.

147.    Children whose families have financial means may be able to pay upfront costs to obtain needed evaluations and services, and then seek reimbursement through a due process hearing.

148.    By contrast, children whose families lack those financial means are typically unable to obtain needed evaluations, services, and placements pending a hearing and decision on their due process complaints.

149.    Children whose families' due process complaints challenge the school district's refusal or failure to provide an adequate evaluation of the child's special education needs, and who are unable to pay upfront and seek reimbursement, are especially prejudiced by extended periods of unlawful hearing delay. Without appropriate evaluations of their children, such parents are unable to identify, much less request, adequate services and supports.

150.     Although a hearing officer can award compensatory education to a child in cases in which the family ultimately prevails, it is well-established that compensatory education is an insufficient substitute to receiving special education supports at the time the child needs them.

151.     Even children who seek continuation of existing services, and are entitled to pendency (that is, continuation of those services pending resolution of their due process complaints) are harmed by these delays.

152.     If a hearing officer has not been assigned or does not timely respond to parties' requests, such families may be unable to timely obtain the "pendency order" required by NYCDOE to implement continuation of services.

153.     When due process complaints in New York City are ultimately decided, the majority of them are resolved in favor of the families.[66]

154.     Indeed, NYSED found that "NYCDOE does not defend numerous cases at hearing, but rather admits that it did not provide FAPE and does not offer to settle these cases, adding to the unacceptable number of due process complaints filed."[67]

155.     Many families are forced to endure the delays of NYCDOE's dysfunctional due process system over and over again.

156.     Because federal and state regulations require that an IEP be reviewed at least once per year, and a parent's challenge to each new IEP must be brought through a new due process complaint, many families must file due process complaints every year. *See* 34 C.F.R. § 300.324(b)(1)(i); 8 NYCRR § 200.4(f).

---

[66] External Review (Ex. 2, Attach. D), at 19.

[67] Compliance Assurance Plan (Ex. 2, Attach. E), at 19.

## FACTS CONCERNING THE MINOR PLAINTIFFS

### J.S.M.

157.    J.S.M. is 15 years old and in eighth grade. NYCDOE has classified her as a student with a learning disability.

158.    J.S.M. has been diagnosed with dyslexia, borderline intellectual functioning, specific learning disorder with impairment in reading, and mixed anxiety and depressive disorder.

159.    As a result of these disabilities, J.S.M. has significant learning, cognitive, speech and language, and emotional impairments.  Accordingly, J.S.M. is a child with a disability within the meaning of the IDEA and a qualified individual with a disability within the meaning of Section 504 and the ADA.

160.    NYCDOE has failed to provide J.S.M. with a free appropriate public education for seven years—since she was in second grade. As a result, J.S.M. has suffered substantial educational harm. J.S.M. currently reads six to seven years behind grade level. A neuropsychological evaluation found that J.S.M. is experiencing anxiety and depression, and that she has severe deficits in her reading abilities as well as significant weaknesses across her academic, speech and language, and daily living skills.

161.    To obtain a free appropriate public education, J.S.M. requires a non-public school placement. To make up for past years of being deprived of a free appropriate public education, J.S.M. urgently requires approximately 1,700 hours of compensatory services in the form of specialized reading and math instruction.  E.M. cannot afford the cost of these services.

162.    On November 12, 2019, J.S.M.'s parent, E.M., filed a due process complaint on behalf of J.S.M., seeking compensatory relief in the form of specialized reading and math instruction, and a non-public school placement.

163.     On November 14, 2019, the New York City Impartial Hearing Office assigned Hearing Officer Mary Noe to the matter.

164.     During a resolution session on December 4, 2019, NYCDOE agreed to hold an IEP meeting to consider providing J.S.M. with a non-public school placement. That IEP meeting was subsequently held, and NYCDOE amended J.S.M.'s IEP to recommend a non-public school placement.  To date, NYCDOE has not yet placed J.S.M. in a non-public school.

165.     NYCDOE did not agree, at the resolution session or thereafter, to provide the requested compensatory reading and math instruction.

166.     On December 27, 2019, E.M., through counsel, contacted the Impartial Hearing Office to schedule a hearing on J.S.M.'s claim for compensatory reading and math instruction.

167.     On January 7, 2020, the office notified the parties that the 30-day resolution period had ended on December 12, 2019 and the matter was to proceed to hearing.  The office also issued a "Motion to Schedule," which is the mechanism by which the office notifies the parties that a case should be scheduled for a hearing, indicating that Hearing Officer Noe would contact the parties.

168.     On January 17, 2020, the Impartial Hearing Office notified the parties that Hearing Officer Noe had recused herself and that the office was "unable to appoint a hearing officer at this time."

169.     To date, no hearing officer has been assigned, and no hearing has been scheduled.

170.     Defendants failed to ensure that a hearing was held, and a decision issued, within the deadline imposed by federal and state law, or January 26, 2020.

171.     Defendants' unlawful delays have caused, and continue to cause, severe harm to J.S.M.  Unless and until she prevails on her due process complaint, she cannot receive services necessary to compensate her for years of deprivation of a free appropriate public education.

**B.M.**

172.    B.M. is 11 years old and in fourth grade.  NYCDOE has classified him as a student with a learning disability.

173.    B.M. has been diagnosed with attention deficit hyperactivity disorder ("ADHD"), specific learning disability with impairments in reading, written expression and mathematics, microcephaly with dysmorphic features, a congenital heart defect, and partial growth hormone deficiency.

174.    As a result of these disabilities, B.M. has significant learning, attentional, and behavioral impairments.  Accordingly, B.M. is a child with a disability within the meaning of the IDEA and a qualified individual with a disability within the meaning of Section 504 and the ADA.

175.    NYCDOE has failed to provide B.M. with a free appropriate public education since he was in kindergarten. As a result, B.M. has suffered substantial educational harm. B.M.'s school and a neuropsychologist have both found that B.M. performs dramatically below grade level.

176.    To obtain a free appropriate public education for B.M., B.M.'s parents, M.C. and L.M., unilaterally enrolled B.M. in the Aaron School, a private school capable of providing an appropriate program and services for students who, like B.M., have learning and attentional difficulties.

177.    M.C. and L.M. cannot afford B.M.'s tuition at the Aaron School.  The Aaron School agreed to accept B.M. without requiring immediate payment, on the condition that M.C. and L.M. seek funding from NYCDOE through a due process proceeding and that they remain contractually obligated to the Aaron School for B.M.'s tuition if they cannot secure funding from NYCDOE.

178.    To make up for past years of deprivation of a free appropriate public education, B.M. also urgently requires approximately 400 hours of compensatory services in the form of one-to-one tutoring.  M.C. and L.M. cannot afford the cost of these services.

179.     On November 4, 2019, M.C. and L.M. filed a due process complaint on behalf of B.M., seeking compensatory relief in the form of tutoring services and tuition to be paid to the Aaron School.

180.     On November 6, 2019, the Impartial Hearing Office assigned Hearing Officer Mary Noe to the matter.

181.     On December 10, 2019, the office notified the parties that Hearing Officer Noe recused herself, and stated that the hearing office was "unable to appoint a hearing officer at this time."

182.     On December 18, 2019, the office notified the parties that the 30-day resolution period had ended on December 5, 2019 and the matter was to proceed to hearing.  The office also issued a "Motion to Schedule" indicating that Hearing Officer Noe would contact the parties—but Hearing Officer Noe had already recused herself.

183.     On January 2, 2020, the Impartial Hearing Office again notified the parties that no hearing officer had been assigned.

184.     To date, no hearing officer has been assigned, and no hearing has been scheduled.

185.     Defendants failed to ensure that a hearing was held, and a decision issued, within the deadline imposed by federal and state law, or January 18, 2020.

186.     Defendants' unlawful delays have caused, and continue to cause, severe harm to B.M.  Unless and until he prevails on his due process complaint, he cannot receive services necessary to compensate him for years of deprivation of a free appropriate public education.

**C.G.**

187.     C.G. is 15 years old and in 10th grade. NYCDOE has classified him as a student with a learning disability.

188.     C.G. has been diagnosed with ADHD, a reading disorder, a disorder of written expression, and a tic disorder.

189.     As a result of these disabilities, C.G. has significant learning, attentional, and behavioral impairments. Accordingly, C.G. is a child with a disability within the meaning of the IDEA and a qualified individual with a disability within the meaning of Section 504 and the ADA.

190.     For years, NYCDOE failed to offer C.G. placements that would provide him a free appropriate public education. Accordingly, in 2013, C.G.'s parent, L.G., unilaterally enrolled him in a non-public school.

191.     Most recently, NYCDOE failed to offer C.G. an appropriate placement for the 2019–2020 school year.

192.     To obtain a free appropriate public education for C.G., in September 2019, L.G. unilaterally re-enrolled C.G. in Bay Ridge Preparatory School ("Bay Ridge Prep"), a private school capable of providing an appropriate program and services to students who, like C.G., have learning disabilities.

193.     L.G. cannot afford C.G.'s tuition at Bay Ridge Prep and the school agreed to accept C.G. without requiring immediate payment, on the condition that L.G. seek funding from NYCDOE through a due process proceeding and that she remain contractually obligated to Bay Ridge Prep for C.G.'s tuition if she cannot secure funding from NYCDOE.

194.     On November 20, 2019, L.G. filed a due process complaint on behalf of C.G. seeking tuition to be paid to Bay Ridge Prep for the 2019–2020 school year, and seeking a pendency order directing NYCDOE to continue funding C.G.'s tuition on an interim basis pending a final decision on his complaint—relief to which C.G. is entitled under IDEA's "stay-put" provision because a hearing officer had approved his placement there for the prior school year.

195.    On November 26, 2019, the Impartial Hearing Office notified the parties that C.G.'s case was not yet assigned to a hearing officer.

196.    On December 18, 2019, the office notified the parties that the 30-day resolution period ended that day and the matter was to proceed to hearing.  The office also stated that it was "unable to appoint a hearing officer at this time."

197.    Because no hearing officer has been assigned to date, L.G. has been unable to obtain a pendency order directing funding of C.G.'s tuition on an interim basis, denying C.G. his right to pendency.

198.    Defendants failed to ensure that a hearing was held, and a decision issued, within the deadline imposed by federal and state law, or February 3, 2020.

**P.W.**

199.    P.W. is eight years old and is in an ungraded classroom. NYCDOE has classified him as a student with autism.

200.    P.W. has been diagnosed with autism, sickle cell traits, and a heart murmur.

201.    As a result of these disabilities, P.W. has significant learning, attentional, behavioral, and speech impairments. Accordingly, P.W. is a child with a disability within the meaning of the IDEA and a qualified individual with a disability within the meaning of Section 504 and the ADA.

202.    For years, NYCDOE failed to offer P.W. placements that would provide him a free appropriate public education.

203.    To obtain a free appropriate public education for P.W., in April 2018, T.F. and P.R.W., P.W.'s parents, unilaterally enrolled P.W. in Gersh Academy, a private school capable of providing an appropriate program and services to students who, like P.W., have autism.

204.    NYCDOE again failed to provide P.W. with appropriate programs and services for the 2018–19 school year.  To obtain a free appropriate public education for P.W., P.R.W. and T.F. unilaterally re-enrolled P.W. in Gersh Academy for the 2018–2019 school year.

205.    P.R.W. and T.F. cannot afford P.W.'s tuition at Gersh Academy. The school agreed to accept P.W. without requiring immediate payment, on the condition that P.R.W. and T.F seek funding from NYCDOE through a due process proceeding and that they remain contractually obligated to Gersh Academy for P.W.'s tuition if they cannot secure funding from NYCDOE.

206.    On May 17, 2019, T.F. and P.R.W. filed a due process complaint on behalf of P.W. seeking tuition to be paid to Gersh Academy for the 2017–2018 and 2018–2019 school years.

207.    On May 23, 2019, the Impartial Hearing Office assigned Hearing Officer Mary Noe. She recused herself.

208.    On May 24, 2019, the office assigned Hearing Officer Robert Nisely. He also recused himself.

209.    The same day, the office assigned Hearing Officer Tanya Hobson-Williams.

210.    A resolution session was held on June 12, 2019, but the parties were unable to reach agreement.

211.    On June 13, 2019, the Impartial Hearing Office issued a "Motion to Schedule" indicating that Hearing Officer Hobson-Williams would contact the parties.  Hearing Officer Hobson-Williams did not schedule a hearing.

212.    On September 25, 2019, P.W. and T.F., through counsel, emailed Hearing Officer Hobson-Williams requesting that a hearing be scheduled.  Hearing Officer Hobson-Williams did not schedule a hearing.

213. On September 26, 2019, the Impartial Hearing Office issued another "Motion to Schedule" indicating that Hearing Officer Hobson-Williams would contact the parties. Hearing Officer Hobson-Williams did not schedule a hearing.

214. On January 21, 2020, the office issued a third "Motion to Schedule" indicating that Hearing Officer Hobson-Williams would contact the parties. Hearing Officer Hobson-Williams did not schedule a hearing.

215. To date, no hearing has been scheduled.

216. Defendants failed to ensure that a hearing was held, and a decision issued, within the deadline imposed by federal and state law, or August 2, 2019.

**Q.T.**

217. Q.T. is 14 years old and in ninth grade. NYCDOE has classified him as a student with a speech or language impairment.

218. Q.T. has been diagnosed with a speech and language impairment. Accordingly, Q.T. is a child with a disability within the meaning of the IDEA and a qualified individual with a disability within the meaning of Section 504 and the ADA.

219. NYCDOE has failed to provide Q.T. with a free appropriate public education for at least three years—since he was in seventh grade. As a result, Q.T. has suffered substantial educational harm. He has fallen far behind his peers academically, particularly in the area of reading. At the time of his 2018– 2019 IEP, Q.T. was reading four years behind grade level. He is also behind in math.

220. Notwithstanding Q.T.'s failure to make academic progress, his 2018–2019 IEP continued his previous placement in an integrated co-teaching classroom, that is, a classroom with one special education teacher and one general education teacher, consisting of students with disabilities and students without disabilities.

221. On November 8, 2019, Q.T.'s parents, W.J.T. and W.H.T., filed a due process complaint on behalf of Q.T., seeking a private neurological evaluation to assess Q.T.'s special education needs and compensatory relief in the form of reading and math instruction. W.J.T. and W.H.T. cannot afford the cost of this evaluation.

222. On November 12, the Impartial Hearing Office assigned Hearing Officer Noe to the matter.

223. On December 13, the office notified the parties that the 30-day resolution period had ended on December 13, and the matter was to proceed to hearing. The office also issued a "Motion to Schedule" indicating that Hearing Officer Noe would contact the parties.

224. To date, no hearing has been scheduled.

225. Defendants failed to ensure that a hearing was held, and a decision issued, within the deadline imposed by federal and state law, or January 22, 2020.

226. Defendants' unlawful delays have caused, and continue to cause, severe harm to Q.T.

227. Without a due process hearing, Q.T. cannot obtain the neuropsychological evaluation he needs to determine appropriate special education supports, or the services necessary, to compensate him for years of deprivation of a free appropriate public education.

## CLASS ALLEGATIONS

228. The named Plaintiffs bring this action, pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, on behalf of themselves and as representatives of a class consisting of:

> All individuals who file, and the children on whose behalf they file, due process complaints with the New York City Department of Education pursuant to 20 U.S.C. § 1415(b)(6) or (k) and 8 NYCRR § 200.5(i), and whose impartial due process decisions are not timely provided under applicable federal and New York State law and regulations.

229. The class is so numerous that joinder of all class members in this action would be impracticable. Upon information and belief, there are thousands of persons in the class.

230. As of January 2020, there are over 10,000 open due process cases in New York City, out of which over 6,800 are late and over 1,300 have not been assigned an impartial hearing officer.

231. Defendants' violations constitute a general and systemic failure to provide children with disabilities and their families the rights guaranteed by law. Because these violations go to the integrity of the hearing system itself, they cannot, by definition, be resolved by resorting to the administrative hearing process.

232. Administrative hearing officers do not have the authority to correct systemic delays within the hearing process, cannot direct Defendants to change their policies or practices with respect to such hearings, and cannot resolve thousands of individual claims challenging unlawful delays in such hearings.

233. The named Plaintiffs will adequately and fairly protect the interests of all members of the proposed class because they have the requisite personal interest in the outcome of this litigation and have no interest antagonistic to any member of the proposed class.

234. The named Plaintiffs are represented by the New York Legal Assistance Group and the law firm Sullivan & Cromwell LLP. Attorneys at both firms are experienced in complex federal litigation and class action litigation.

235. The claims of the named Plaintiffs are typical of the claims of the class because they have suffered, and are suffering, as a result of Defendants' systemic delays, in the same manner as other members of the class.

236. Class members present common questions of law and fact and these questions predominate over any individual questions.

237. The common questions include, but are not limited to:

        a.     whether the City Defendants are systemically failing to issue hearing decisions on due process complaints filed by New York City families within the timeframes set forth under applicable federal and New York State law;

        b.     whether the State Defendants are systemically failing to ensure that the City Defendants issue hearing decisions on due process complaints filed by New York City families within the timeframes set forth under applicable federal and New York State law;

        c.     whether the City Defendants' delays in issuing hearing decisions on due process complaints filed by New York City families, and the State Defendants' failure to remedy those delays, violate the Individuals with Disabilities Education Act and its implementing regulations;

        d.     whether the City Defendants' delays in issuing hearing decisions on due process complaints filed by New York City families, and the State Defendants' failure to remedy those delays, violate the New York Education Law and its implementing regulations; and

        e.     whether City Defendants' delays in issuing hearing decisions on due process complaints filed by New York City families, and the State Defendants' failure to take remedy those delays, violate the ADA and Section 504.

238.    Defendants' failures have harmed all members of the plaintiff class, as described further above, thereby making appropriate final declaratory and injunctive relief with respect to the class as a whole.

## CLAIMS

## FIRST CAUSE OF ACTION

(Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*,
and implementing regulations)

*Against the State Defendants*

239.    Plaintiffs repeat and re-allege the allegations in Paragraphs 1 through 238 above.

240.    As the state educational agency, NYSED is legally responsible for ensuring compliance with the IDEA within New York State.

241.    The State Defendants denied, and are denying, the rights of Plaintiffs and the putative class by failing to ensure that final decisions on due process complaints challenging violations of the IDEA result in hearing decisions within the timeframes set forth under applicable federal law.

242.    Accordingly, the State Defendants have violated Plaintiffs' rights under 20 U.S.C. § 1415 and 34 C.F.R. § 300.515(a) and deprived Plaintiffs of a free appropriate public education under 20 U.S.C. § 1400 *et seq.*

243.    Plaintiffs' rights under the IDEA are enforceable under 42 U.S.C. § 1983, as the State Defendants have acted under color of state law, as well as under 20 U.S.C. § 1415(i) and the Court's equitable powers.

244.    As a result of these violations, Plaintiffs are entitled to injunctive and declaratory relief, and to costs and attorneys' fees.

# SECOND CAUSE OF ACTION

(Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*,
and implementing regulations)

*Against the City Defendants*

245.    Plaintiffs repeat and re-allege the allegations in Paragraphs 1 through 238 above.

246.    As the local educational agency, NYCDOE is legally responsible for ensuring compliance with the IDEA within New York City.

247.    The City Defendants denied, and are denying, the rights of Plaintiffs and the putative class by failing to issue final decisions on due process complaints challenging violations of the IDEA within the timeframes set forth under applicable federal law.

248.    Accordingly, the City Defendants have violated Plaintiffs' rights under 20 U.S.C. § 1415 and 34 C.F.R. § 300.515(a) and deprived Plaintiffs of a free appropriate public education under 20 U.S.C. § 1400 *et seq.*

249.    In addition, Plaintiffs' rights under the IDEA are enforceable under 42 U.S.C. § 1983, as the City Defendants have acted under color of state law, as well as under 20 U.S.C. § 1415 and the Court's equitable powers.

250.    The City Defendants have acted with deliberate indifference in engaging in the policies, practices and customs that have led to these violations, despite clear notice that their policies, practices and customs have caused the violations, and without correcting the policies, practices and customs.  These policies, practices and customs constitute the de facto policy of the City Defendants.

251.    As a result of these violations, Plaintiffs are entitled to injunctive and declaratory relief, and to costs and attorneys' fees.

## THIRD CAUSE OF ACTION

(New York Education Law § 4401 *et seq.* and implementing regulations)

*Against the City Defendants*

252.     Plaintiffs repeat and re-allege the allegations in Paragraphs 1 through 238 above.

253.     NYCDOE and NYSED are legally responsible for ensuring compliance with the New York Education Law within New York City.

254.     Defendants denied, and are denying, the rights of Plaintiffs and the putative class by failing to issue final decisions on complaints challenging violations of the IDEA within the timeframe set forth in 8 NYCRR § 200.5(j)(2)(v).

255.     Accordingly, Defendants have violated Plaintiffs' rights under 8 NYCRR § 200.5(j)(5) and deprived them of a free appropriate public education under the New York Education Law.

256.     Plaintiffs' rights under the New York Education Law are enforceable under 8 NYCRR § 200.5(k)(3), as well as under the Court's equitable powers.

257.     As a result of these violations, Plaintiffs are entitled to injunctive and declaratory relief, and to costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

(Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a))

*Against All Defendants*

258.     Plaintiffs repeat and re-allege the allegations in Paragraphs 1 through 238 above.

259.     The Minor Plaintiffs are individuals with disabilities under the Rehabilitation Act because each one has a physical or mental impairment that results in a substantial impediment of a major life activity.  29 U.S.C. § 705(20)(B).

260.     The Minor Plaintiffs are all qualified for the program at issue because, under Section 504, schools are required to provide a free appropriate public education through special education and related services.  *See, e.g.*, 34 C.F.R. § 104.33.

261.     Defendants NYSED and NYCDOE are subject to Section 504 because they receive federal financial assistance.

262.     Defendants' failure to ensure that final decisions on Plaintiffs' and the putative class's due process challenges are issued within the timeframes set forth under applicable federal and New York State law has denied the Minor Plaintiffs and the putative class their rights to a free appropriate public education.   In so doing, Defendants have violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, by discriminating against the Minor Plaintiffs and the putative class on the basis of their disabilities.

263.     Defendants have been on notice of the systemic unlawful hearing delays, and the numerous causes of those delays, for years, but have done nothing to effectively remedy the delays. Instead, hearing delays have become lengthier and now putative class members wait an average of 259 days for decisions on their due process complaints.  This extensive waiting period substantially delays the implementation of accommodations designed to meet the individual needs of students with disabilities and causes discrimination against the students because they are unable to receive the free appropriate public education that their classmates without disabilities receive.

264.     In failing to effectively address the hearing delays, Defendants have acted in bad faith and exercised gross misjudgment, and have acted with deliberate or reckless indifference to the Minor Plaintiffs' federally protected rights.

265.     The Minor Plaintiffs' rights under Section 504 are enforceable under 29 U.S.C. § 794a, as well as the Court's equitable powers.

266.     As a result of these violations, Plaintiffs are entitled to injunctive relief and declaratory relief, and to costs and attorneys' fees.  29 U.S.C. § 794a.

## FIFTH CAUSE OF ACTION

(Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 *et seq.*)

*Against All Defendants*

267.     Plaintiffs repeat and re-allege the allegations in Paragraphs 1 through 238 above.

268.     The Minor Plaintiffs are qualified individuals with disabilities under the Americans with Disabilities Act because each has a physical or mental impairment that substantially impairs a major life activity.  42 U.S.C. § 12102(1).  The Minor Plaintiffs and the putative class are entitled to a free appropriate public education.

269.     By failing to ensure that final decisions on due process complaints challenging denial of a free appropriate public education result in hearing decisions within the timeframes set forth under applicable federal and New York State law, Defendants have discriminated against the Minor Plaintiffs and the putative class in violation of the Americans with Disabilities Act on the basis of their disabilities by denying them access to a free appropriate education and accommodations designed to meet their individual needs as adequately as the needs of children without disabilities.

270.     Defendants have been on notice of systemic unlawful hearing delays, and the numerous causes of those delays, for years, but have done nothing to effectively remedy the delays. Instead, hearing delays have become lengthier.

271.     In failing to effectively address the hearing delays, Defendants have acted in bad faith and exercised gross misjudgment, and have acted with deliberate or reckless indifference to the Minor Plaintiffs' federally protected rights.

272.     Minor Plaintiffs' rights under the ADA are enforceable under 42 U.S.C. § 12133, as well as the Court's equitable powers.

273.     As a result of these violations, Plaintiffs are entitled to injunctive relief and declaratory relief, and to costs and attorneys' fees.  42 U.S.C. § 12205.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter judgment jointly and severally as against all Defendants:

274.     Certifying that this action may be maintained as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, with the plaintiff class consisting of:

> All individuals who file, and the children on whose behalf they file, due process complaints with the New York City Department of Education pursuant to 20 U.S.C. § 1415(b)(6) or (k) and 8 NYCRR § 200.5(i), and whose impartial due process decisions are not timely provided under applicable federal and New York State law and regulations;

275.     Declaring that Defendants' conduct has violated: (1) the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*., and its implementing regulations; (2) the New York Education Law § 4401 *et seq*. and its implementing regulations; (3) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a); and (4) the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 *et seq*.

276.     Enjoining and directing all Defendants to cease engaging in the violations of, and directing them to comply with, the IDEA and its implementing regulations, the New York Education Law § 4401 *et seq*. and its implementing regulations, Section 504, and the ADA; and

277.    Awarding to Plaintiffs disbursements, costs, and attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I); 29 U.S.C. § 794a; 42 U.S.C. § 1988; and 42 U.S.C. § 12205.

278.    Granting such other and further relief as the Court may deem just and proper.


Dated: February 7, 2020
New York, New York

By: /s/Danielle F. Tarantolo
    Danielle F. Tarantolo
    Jane Greengold Stevens
    Laura Davis
    Sandra Robinson
    Phyllis Brochstein
    NEW YORK LEGAL ASSISTANCE GROUP
    7 Hanover Square
    New York, New York 10004-4027
    (212) 613-6551
    dtarantolo@nylag.org


By: /s/Michael L. Akavan
    Jessica M. Klein
    Michael L. Akavan
    Catherine E. Akenhead
    Tasha N. Thompson
    SULLIVAN & CROMWELL LLP
    125 Broad Street
    New York, New York 10004-2498
    (212) 558-4000
    kleinj@sullcrom.com
    akavanm@sullcrom.com

    *Attorneys for Plaintiffs*