```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 J.S.M., et al.,

                        Plaintiffs,           MEMORANDUM & ORDER
                                              20-CV-705 (EK)(LKE)

          -against-


 NEW YORK CITY DEPARTMENT OF
 EDUCATION, et al.,

                        Defendants.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Before the Court is the parties' joint motion for final approval of a proposed settlement agreement and fee award in this class action. For the reasons outlined below, the Court concludes that the settlement agreement is fair, adequate, and reasonable, and that the fee award is also reasonable. The parties' motion is granted.

### I. Background

In this action, the plaintiffs have challenged the failure of the New York City Department of Education ("NYCDOE") and the New York State Education Department ("NYSED") to satisfy the requirements of the Individuals with Disabilities Education Act ("IDEA"). They allege that the defendants systematically failed to resolve due process complaints submitted by (and on

behalf of) special-needs children within IDEA's prescribed timeframe. *See* Am. Compl. ¶¶ 3-10, ECF No. 21.

The plaintiffs filed this lawsuit in February 2020. Original Compl., ECF No. 1. After the parties stipulated to class certification, *see* ECF No. 30, the Court certified the following Rule 23(b)(2) class:

> Individuals who file or have filed due process complaints, and the children on whose behalf due process complaints are filed, when the due process complaints are unresolved and the decisions on such complaints have not been timely provided under applicable federal and New York State law.

*See* Stip. & Order for Class Cert. 3, ECF No. 33. The Court also appointed the New York Legal Assistance Group ("NYLAG") and Sullivan & Cromwell LLP as class counsel. *Id.* at 5.

Extensive discovery followed. Over the next year, the parties exchanged over 40,000 documents, amounting to almost 300,000 pages. Tarantolo Decl. ¶ 7, ECF No. 194. They exchanged 119 document requests and forty interrogatories. *Id.* ¶ 6. They retained a global advisory firm to review data produced in discovery. *Id.* ¶¶ 8, 23. And they held repeated meet-and-confer sessions. *Id.* ¶ 7. The parties ultimately filed cross-motions for partial summary judgment, *see* ECF Nos. 122, 135, which are

2

currently in abeyance at the parties' request.  *See* Docket Order dated September 6, 2023.

Settlement negotiations were similarly extensive. Beginning in 2020, the parties report, they convened near-weekly working sessions to craft a potential agreement. Tarantolo Decl. ¶ 13.  These discussions also involved outside education experts and state and local government officials.  *Id.* ¶¶ 13, 15.  The parties retained the Honorable James C. Francis — a former United States Magistrate Judge now working as an alternative dispute resolution professional — to serve as a mediator starting in March 2022.  *Id.* ¶ 14.  Judge Francis convened around two dozen sessions between 2022 and 2024.  *Id.*

Those negotiations ultimately bore fruit, with the parties filing a joint motion for preliminary settlement approval in November 2024.  *See* Mot. for Prelim. Approval, ECF No. 192.  The Court granted preliminary approval in early December.  *See* Order Granting Prelim. Approval, ECF No. 196.  Pursuant to that order, the parties notified class members about the settlement agreement using email addresses associated with each class member's due process complaint.[1]  *Id.* ¶ 3.  The notice informed class

---

[1] In its preliminary order, the Court found that this notification process "complie[d] with the requirements set forth under Federal Rule of

3

members that they could object to the settlement via email or telephone. *Id.* ¶ 4.

Class counsel received only two objections. Following minor revisions to the agreement, one objector withdrew its objections. Suppl. Tarantolo Decl. ¶ 17, ECF No. 201-3. On April 11, 2025, the Court held a final fairness hearing on the modified settlement agreement (hereinafter the "Final Settlement Agreement"). *See* ECF No. 203-1. The sole remaining objector spoke at the hearing, expressing concern about the scope of the contemplated release and whether it might extend — intentionally or not — to certain plaintiffs in at least one other pending IDEA-related class action. Shortly after the hearing, however, she, too, withdrew her objections. *See* Hyman Ltr., ECF No. 204-1.

## II.  Key Settlement Terms

The key provisions of the Final Settlement Agreement include:

1. A requirement that the defendants resolve fifty percent of due process complaints in a timely manner within one year, seventy-five percent within two years, and ninety-five percent within three years. Final Settlement Agreement § III.B.1.

---

Civil Procedure 23 and any other applicable law." Order Granting Prelim. Approval ¶ 3(b). The Court incorporates that finding herein.

4

2. A requirement that the defendants conduct an expedited review of backlogged cases according to an agreed-upon prioritization scheme. *Id.* § IV.A

3. A requirement that NYCDOE upgrade its technology for filing and monitoring due process complaints. *Id.* §§ V.A.1-5.

4. A requirement that the defendants adopt certain practices with respect to due process complaint hearings, settlements, mediations, and resolutions. *Id.* §§ VI-IX.

5. A requirement that the defendants provide certain "harm mitigation" services, such as interim assistance for certain students, while they work toward compliance with the timeliness benchmark. *Id.* § X.

6. A requirement that the defendants share certain data (such as the timeliness data) with class counsel. *Id.* §§ XI-XII.

7. A release of all claims for "[s]ystemic" relief pertaining to "the alleged failure to deliver Timely DPC decisions."[2] *Id.* §§ II.KK, XIII.

8. A provision stating that the agreement will sunset after four years, and will otherwise be extended only by order of the Court. *Id.* § XII.A.4.

9. Attorneys' fee awards to NYLAG ($785,100) and Sullivan & Cromwell ($597,900). *Id.* §§ XIV.A-B.

### III. Legal Standard

Before approving a class action settlement, a court must conclude that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Under Rule 23(e),

---

[2] The agreement defines "Timely" to mean "closed . . . within the timeframe set forth in 20 U.S.C. § 1415(f)(1)(B)(ii) and 34 C.F.R. § 300.515(a)." Settlement Agreement § II.NN.

5

the Court must consider whether (1) class representatives and counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the settlement provides adequate relief; and (4) the settlement treats class members equitably.

The Rule 23(e) factors are not exhaustive. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. We must also consider the nine factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463.[3]

### IV. Discussion

**A. The Rule 23(e)(2) Factors**

The Rule 23(e)(2) factors weigh in favor of approval.

---

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

1. <u>Adequate Representation by Class Counsel and Named Plaintiffs</u>

Class counsel has ably represented the class members, both before this Court and in the complex discovery and settlement efforts that played out over the past five years. The named plaintiffs assisted in these efforts through regular meetings, interviews, and document production. Tarantolo Decl. ¶¶ 18-19.

2. <u>Arm's Length Negotiation</u>

The Final Settlement Agreement is the result of extensive, multi-year negotiations between experienced lawyers, often under the auspices a retired federal judge. *See id.* ¶ 14; *see also* Suppl. Tarantolo Decl. ¶¶ 36-39; Monahan Decl. ¶ 2, ECF No. 201-2. This supports approval. *See M.F. ex rel. Ferrer v. New York City Dep't of Educ.*, 671 F. Supp. 3d 221, 226 (E.D.N.Y. 2023).

3. <u>Adequacy of Relief</u>

To determine the adequacy of relief contemplated by the Final Settlement Agreement, the Court must consider the costs and risks of proceeding to trial and appeal, as well as the terms of the proposed fee award. Fed. R. Civ. P. 23(e)(2)(C).[4] This analysis incorporates several *Grinnell*

---

[4] Two other Rule 23(e)(2)(C) factors do not apply to this case. The first is "the effectiveness of any proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). A court need not consider this

7

factors. *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693-94 (S.D.N.Y. 2019); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019). Accordingly, the Court analyzes those *Grinnell* factors here, and addresses any remaining factors in the following section.

***Complexity, Expense, and Likely Duration of Litigation (Factor One).*** Absent settlement approval, complex and protracted litigation is likely. The parties have conducted extensive discovery and have drafted pending motions for partial summary judgment. And the defendants continue to deny any liability. *See* Final Settlement Agreement § XIV.I.1. This means the path to trial would be "long, complicated, and expensive." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 196-97 (S.D.N.Y. 2012). Approving the agreement eliminates this risk.

***Risks of Establishing Liability and Damages (Factors Four and Five).*** The risks of establishing liability and relief also weigh in favor of approval. Again, the defendants deny liability, and have contested it vociferously at the summary judgment stage.

---

factor where, as here, a settlement agreement only contemplates "injunctive relief that applies generally equally." *Romero v. Securus Techs., Inc.*, 2020 WL 6799401, at *5 (S.D. Cal. Nov. 19, 2020). The second is the nature of "any agreement made in connection with the [consent decree]." Fed. R. Civ. P. 23(e)(2)(C)(iv). No such agreement exists here. Tarantolo Decl. ¶ 17.

8

Perhaps more importantly in this case, even if the plaintiffs were to prevail on liability, it is far from certain that they would receive more (or better) relief compared to that outlined in the Final Settlement Agreement. As the undersigned has noted at more than one appearance in this case, the Court is not especially well-positioned to resolve the "very complicated resource and process problems" that the record suggests have led to delays in the due process system. *See* Nov. 3, 2022 Conf. Tr. 105:9-107:5, ECF No. 159; *see also Blackman v. District of Columbia*, 454 F. Supp. 2d 1, 13-14 (D.D.C. 2006) (noting that court was ill-positioned to determine the defendants' "future ability to comply with their IDEA obligations on any particular timetable"). So, setting and policing a compliance timetable at the remedy phase would be "a difficult task indeed." *Blackman*, 454 F. Supp. 2d at 14.

And if the Court were simply to order immediate compliance, "the more likely result . . . would have been endless rounds of contempt litigation arising from [the] defendants' almost inevitable inability to comply overnight with such an order." *Id.* at 13. Indeed, the Second Circuit has long recognized the difficulty of enforcing orders that effectively require a state defendant to "raise and allocate large sums of money," as an order mandating a dramatic expansion of the due process hearing system likely would. *Rhem v. Malcolm*, 507 F.2d

9

333, 341 (2d Cir. 1974).  Legal commentators make similar observations.  *See* Ross Sandler & David Schoenbrod, *Democracy by Decree: What Happens When Courts Run Government* 10, 45-97 (2003) (arguing that courts are "ill-equipped to manage governmental programs which require choosing among lawful options, allocating limited resources, and dealing with unexpected circumstances and unwanted side effects," and pointing specifically to judicial management of special education systems).

Moreover, the Final Settlement Agreement includes certain provisions — such as those concerning technological upgrades and best-practice improvements — that might well have been "beyond the scope of appropriate, Court-ordered injunctive relief" at the remedy phase.  *Blackman*, 454 F. Supp. 2d at 14.  Thus, the settlement does not just minimize the risks of proving the plaintiffs' entitlement to relief: it provides relief arguably superior to that which the plaintiffs could have obtained at trial.  *See Kozlowski v. Coughlin*, 871 F.2d 241, 244 (2d Cir. 1989).

***Risks of Maintaining Class Action (Factor Six)***.  The class in this case was certified at the consent of the parties.  ECF No. 33.  But the undersigned has, at various times, expressed concerns about the long-term viability of the class.

One such concern ripened early in the case, when the Court called for submission on whether the class, as certified,

10

constituted a "fail-safe class." Docket Order dated June 23, 2023; *see also Spread Ents. Inc. v. First Data Merch. Servs. Corp.*, 298 F.R.D. 54, 69 (E.D.N.Y. 2014) (fail-safe class is one in which "either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment"). The parties submitted letter briefs on this issue, ECF Nos. 168-70, and the Court also heard oral argument. *See generally* Aug. 9, 2023 Conf. Tr., ECF No. 172.

The Court also questioned whether this class overlapped too substantially with those certified in one or more actions pending in other courts. *See id.* at 51:16-18. During oral argument, the Court specifically flagged *Jose P. v. Ambach*, No. 79-CV-270 (E.D.N.Y. 1979), and asked the parties to identify similar IDEA cases in the Eastern and Southern Districts of New York. Aug. 9, 2023 Conf. Tr. at 51:24-52:5. The parties obliged, producing a list that contained six active IDEA cases in those two districts. *See* List of Certified IDEA Class Actions, ECF No. 173-2.

Given these concerns, it was at least possible that the class could be decertified before or during trial. This weighs in favor of approving the settlement. *D.S. ex rel. S.S. v. New York City Dep't of Educ.*, 255 F.R.D 59, 78 (E.D.N.Y. 2008) (holding that the "risk that the class or subclass may be decertified generally weighs in favor of settlement," because

11

settlement "ensures that class and subclass members may actually benefit from the remedies to be provided").

***Range of Reasonableness in Light of Best Possible Recovery and Attendant Risks of Litigation (Factors Eight and Nine).*** Courts typically analyze these two factors together. *In re Payment Card*, 330 F.R.D. at 47-48. This requires "compar[ing] the terms of the compromise with the likely rewards of litigation." *Id.* at 48. The "attendant risks" part of this analysis overlaps with the preceding discussion of the fourth and fifth *Grinnell* factors. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 696.

The relief outlined in the Final Settlement Agreement falls well within the range of reasonableness. As already noted, the parties have drafted timeliness benchmarks that provide administrable and realistic relief to the plaintiffs. While it remains possible that the defendants will fall short of those benchmarks, they have already made appreciable progress toward meeting them. *See* Fairness Hr'g Tr. 17:9-23 (plaintiffs' counsel reporting that the timeliness rate for closed cases in the 2023-2024 school year was approximately eighty-four percent, compared to thirty percent when the complaint was filed). And the timeliness benchmarks are buttressed by other forms of relief (such as the technological upgrades) that the plaintiffs likely could not have received at trial. Thus, as the *Blackman*

court observed about a similar settlement, "the relief provided by the [settlement] compares favorably with that which could have been obtained at trial." *Blackman*, 454 F. Supp. 2d at 14.

*Terms of Fee Award*. Rule 23(e)(2)(C) also requires a court to analyze a settlement agreement's proposed fee award. The Court addresses this issue in greater depth below. *See infra* at Part IV.C. Here, however, it is sufficient to note that the Final Settlement Agreement's proposed fee award is around half of NYLAG's estimated lodestar, and less than twenty percent of Sullivan & Cromwell's estimated lodestar. *See infra* at Part IV.C. It is therefore presumptively reasonable. *See Berni v. Barilla G. e R. Fratelli, S.p.A.*, 332 F.R.D. 14, 36 (E.D.N.Y. 2019), *vacated and remanded on other grounds sub nom. Berni v. Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020).

4. Equitable Treatment of Class Members

A court must also consider whether a proposed settlement treats class members inequitably. Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note to 2018 amendment. Relevant factors in this analysis include "[1)] whether the apportionment of relief among class members takes appropriate account of differences among their claims, and [2)] whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id.*

The Final Settlement Agreement's provisions affect all class members equally. The proposed process improvements, technological upgrades, and timeliness benchmarks apply equally to all class members. Thus, this factor is, at worst, neutral. *E.g.*, *Sourovelis v. City of Philadelphia*, 515 F. Supp. 3d 343, 358 (E.D. Pa. 2021).[5]

**B.   The Remaining *Grinnell* Factors**

The preceding analysis captured most of the *Grinnell* factors. Only three remain, and they also support approval.

1.   <u>The Reaction of the Class</u>

To determine the reaction of the class, a court considers the "nature and merits of objections and the proportion of class members who object." 4 *Newberg and Rubenstein on Class Actions* § 13:58 (6th ed.). Here, out of more than 10,000 class members, there were only two objections, both of which were eventually withdrawn. This weighs in favor of approval. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("[T]he absence of substantial opposition is indicative of class approval . . . .").

---

[5] As noted, one of the objectors — Elisa Hyman — initially asserted that the Settlement Agreement's release clause could be misinterpreted to cover claims that certain class members are bringing in a separate IDEA class action. *See* Hyman Obj., ECF No. 201-6. Courts regularly "police a proposed settlement agreement to ensure that the release is not overly broad." 4 *Newberg and Rubenstein on Class Actions* § 13:61 (6th ed.). But Ms. Hyman has since withdrawn her objection. And in any event, she did not identify specific language in the release provision that could be misinterpreted to cover the claims in the separate class action.

14

2. <u>The Stage of the Proceedings</u>

When reviewing a class settlement, a court considers the stage of proceedings to determine "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 699. Here, as discussed, the parties have conducted extensive discovery, years of settlement negotiations and mediation sessions, and partial summary judgment briefing. The Court therefore finds that the plaintiffs understand the relative strengths and weaknesses of their legal positions. *See id.* (plaintiffs were "sufficiently well informed" after going through mediation, "some discovery," and one round of motion-to-dismiss briefing).

3. <u>Defendants' Ability to Withstand Greater Judgment</u>

Because the Final Settlement Agreement only provides injunctive relief, the Court need not consider whether the defendants could withstand a greater judgment. *See, e.g.*, *Ingles v. Toro*, 438 F. Supp. 2d 203, 211 (S.D.N.Y. 2006); *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 162 (S.D.N.Y. 1999).

**C.    The Fee Award**

When a class action settlement awards attorneys' fees, a court must find the award reasonable. Fed. R. Civ. P. 23(h).

15

There are six factors to consider: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

The preceding analysis covers the first four factors, and there is no need to belabor them here. Instead, the Court will simply reiterate that this is a very complex case, in which able counsel for all sides have invested considerable time, effort, and resources. *See, e.g.*, Suppl. Tarantolo Decl. ¶ 27 (summarizing NYLAG efforts); Tarantolo Decl. ¶¶ 9-16 (same); Monahan Decl. ¶ 4 (summarizing Sullivan & Cromwell efforts). As already discussed, the risks of continued litigation are substantial, both with respect to liability and remedies.

Turning to the fifth factor, "[w]here the settlement relief is injunctive-only, the award of class counsel's lodestar as [attorneys'] fees appears reasonable."[6] *Berni*, 332 F.R.D. at 36. NYLAG estimates its lodestar at just over $1.5 million, and it will receive around half that amount under the Final Settlement Agreement. Suppl. Tarantolo Decl. ¶ 33. Meanwhile, Sullivan & Cromwell estimates its lodestar at around $4.5

---

[6] The lodestar method looks to "the product of the number of hours reasonably expended by each attorney and the reasonable hourly rate." *Sulkowska v. City of New York*, 170 F. Supp. 2d 359, 365 (S.D.N.Y. 2001).

16

million, and it will receive *seven times* less than that under the Final Settlement Agreement. Monahan Decl. ¶ 10. Accordingly, the proposed fee awards are clearly reasonable under the circumstances.

As for the sixth factor, it is well established that "[p]ublic policy favors the award of reasonable attorneys' fees in class action settlements." *Jermyn v. Best Buy Stores, L.P.*, No. 08-CV-214, 2012 WL 2505644, at *12 (S.D.N.Y. June 27, 2012).

### V. Conclusion

For the foregoing reasons, the joint motion for approval of the settlement and of the fee award is granted. The Final Settlement Agreement, ECF No. 203-1, and every term thereof are incorporated herein, and shall have the full force of an order of this Court. The defendants shall pay attorneys' fees to the plaintiffs as set forth in the Final Settlement Agreement. The parties' pending cross-motions for partial summary judgment are denied as moot. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

                                                       /s/ Eric Komitee
                                                     ERIC KOMITEE
                                                     United States District Judge

Dated:   April 22, 2025
         Brooklyn, New York